UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BRIGGS AVE LLC,

           Plaintiff,

        -v-

INSURANCE CORP. OF HANNOVER,

           Defendant.
------------------------------------------------------------x

05 Civ. 4212 (GEL)

**OPINION AND ORDER**

Daniel J. Scher, Scher & Scher, P.C., Great Neck, NY, for plaintiff.

Nancy Lyness, White Fleischner & Fino LLP, New York, NY, for defendant.

GERARD E. LYNCH, District Judge:

      Plaintiff Briggs Ave LLC ("Briggs") brings this action seeking a declaration that its insurer, defendant Insurance Company of Hannover ("ICH"), is required to defend and indemnify Briggs as to a personal injury lawsuit filed by a tenant in a building it owns ("the Bonilla lawsuit"). ICH now moves for judgment on the pleadings and/or summary judgment on the ground that Briggs failed to comply with various notice requirements contained in the Briggs policy, and that therefore Briggs is not entitled to coverage as to the Bonilla lawsuit. Briggs, in turn, cross-moves for summary judgment. For the following reasons, ICH's motion will be granted, Briggs's will be denied, and this case will be dismissed with prejudice.

# BACKGROUND

The relevant facts are undisputed. ICH issued to Briggs a liability insurance policy that provided coverage for the period of September 20, 2002, to September 20, 2003. (ICH Rule 56.1 Statement ¶ 4; Briggs Rule 56.1 Statement ¶ 4.) On or about July 28, 2003, Nelson Bonilla – a tenant in a building owned by Briggs – commenced a personal injury action against Briggs in state court, claiming that on May 14, 2003, he was injured when a piece of ceiling in his bedroom fell and struck him, and that the accident was caused by Briggs's negligence in maintaining the premises. (ICH Statement ¶¶ 8-11; Briggs Statement ¶ 8-11.) The lawsuit seeks $2 million in damages. (Lyness Aff., Ex. B., Bonilla Compl., at 4.) Shaban Mehaj, sole principal of Briggs, was informed of the incident on or shortly after May 14, 2003, and he visited the apartment thereafter. He asserts that he "was not informed that anyone in the apartment had been injured in this incident and had no reason to suspect so," and that he "did not notify [ICH] because [he] had no knowledge or notice that anyone had been injured." (Mehaj Aff. ¶¶ 5-8.)

On or about July 30, 2003, Bonilla served his personal injury complaint on the Secretary of State of New York (ICH Statement ¶ 13; Briggs Statement ¶ 13; Lyness Aff., Ex. J., June 15, 2004, Letter from Briggs to ICH, at 1), who, the parties agree, functions as Briggs's agent for service under N.Y. Bus. Corp. L. § 306. (Compl. ¶ 8; Lyness Aff., Ex. J., June 15, 2004, Letter from Briggs to ICH, at 1; ICH Statement ¶ 21; Briggs Statement ¶ 21.) Under that statute, "[s]ervice of process on [Briggs was] complete when the secretary of state [wa]s so served." Id. § 306(b)(1). The Secretary of State properly forwarded copies of the process to Briggs at the address it had on file (ICH Statement ¶ 21; Briggs Statement ¶ 21), but because that address was not current – a result of Briggs's failure to advise the Secretary of a change of address – Briggs

2

did not receive the process forwarded by the Secretary of State, and remained unaware of the Bonilla lawsuit for some time. (Compl. ¶¶ 9-11, 20; June 15, 2004, Letter, at 1.)

Mehaj's affidavit explains that he failed to keep current the address on file with the Secretary of State because the attorney that set up Briggs as a corporate entity, and who filed the original address with the Secretary, did not explain to Mehaj the significance of keeping that address up to date. After the attorney stopped working for Briggs, Briggs moved offices, and while Mehaj diligently informed various city agencies, the IRS, his tenants, and others about the change, he did not know it was necessary to advise the Secretary of State. (Mehaj Aff. ¶¶ 14-23; ICH Statement ¶ 20; Briggs Statement ¶ 20.)[1]

Briggs finally received notice of the lawsuit in late March or early April of 2004, when (it appears) Bonilla moved for default judgment against Briggs, and as required by the default judgment statute, N.Y.C.P.L.R. § 3215(g)(4), directly served Briggs at its then-current address. (Compl. ¶ 12; Briggs Mem. 2.)[2] Briggs promptly notified its insurance broker of the Bonilla lawsuit, and the broker promptly filed a claim with ICH, on or about April 5, 2004. (Compl. ¶ 14-16; ICH Statement ¶¶ 12, 15; Briggs Statement ¶¶ 12, 15; Briggs Mem. 2-3.)

ICH responded to the claim in a letter to Briggs dated April 12, 2004. In that letter, ICH observes that the Bonilla lawsuit arises from an accident that occurred eleven months earlier on May 14, 2003, that Briggs had been served with process through the Secretary of State over eight

---

[1] Once he received notice of the Bonilla suit, and figured out what had happened, Mehaj hired an attorney to update the address on file with the Secretary of State, and this was done in September 2004.

[2] Although neither party directly addresses the issue, it appears that a default judgment was ultimately not entered against Briggs, and that the Bonilla lawsuit is still pending in state court.

months earlier on July 28, 2003, but that Briggs did not inform ICH of the incident or suit until April 2004. ICH states that this late disclosure violated conditions for coverage in the insurance policy, and excused ICH from defending Briggs against the lawsuit, or indemnifying it in any way for fees incurred, settlement costs, or any judgment ultimately obtained by Bonilla. The conditions that ICH claimed were breached by Briggs are reproduced here (and were reproduced in the letter) in full:

> ***SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS***
>
> **2.    *Duties in the Event of Occurrence, Offense, Claim Or Suit***
>
> *a.    You must see to it that [ICH is] notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .*
>
> *b.    If a claim is made or "suit" is brought against any insured, you must: . . .*
>
> *(2)    Notify [ICH] as soon as practicable.*
>
> *c.    You and any other involved insured must:*
>
> *(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."*

(Lyness Aff, Ex. E, April 12, 2004, Letter from ICH to Briggs; see also id. Ex. A, Briggs Ins. Policy, CGL Coverage Form, at 9.)

Briggs then began this action.

## DISCUSSION

ICH argues that Briggs is not entitled to insurance coverage because it failed to notify ICH of the Bonilla incident or lawsuit until eleven months after the incident, and eight months after the filing of the lawsuit, thus violating the conditions in the Briggs policy requiring (1) notice to ICH "as soon as practicable of an occurrence or an offense" that may result in a lawsuit, (2) notice to ICH "as soon as practicable" of a lawsuit filed against it, and (3) that Briggs "immediately" send to ICH papers received in connection with any lawsuit. (ICH Mem. 2-3.) Briggs responds that none of these conditions was violated, at least not as a matter of law, and also argues that ICH has waived certain of these arguments by failing to specifically mention them in its April 12, 2004, letter disclaiming coverage.

I.   Waiver

There is no merit to Briggs's argument that ICH waived the objection that it received untimely notice of the Bonilla "occurrence" – the accident itself, as opposed to the lawsuit – by failing to mention it in its April 12 letter. (Briggs Mem. 12-16.) That letter notes specifically the date on which the accident occurred, May 14, 2003, and notes that Briggs "first notified [ICH] of the *occurrence*, claim or suit [on] April 2, 2004." (April 12 Letter, at 2 (emphasis added).) It goes on to state that "[a]s a result, Briggs . . . breached the following policy conditions," and it then quotes the policy, including the provision specifying Briggs's duties with respect to occurrences that may result in lawsuits. (Id.) Thus, the letter clearly asserted the argument that Briggs had provided untimely notice of the "occurrence" that spawned the Bonilla lawsuit.

5

II. The Notice Conditions

      A.    Prejudice

For the purposes of this motion, Briggs does not dispute that under New York law, ICH need not show that it has been prejudiced by any violation of the notice conditions by Briggs. (Briggs Mem. 18-19.) In any event, the New York rule is clear and well established. See Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332 (2005) (holding primary liability insurer need not show prejudice for late notice defense, but noting exceptions to rule, inapplicable here, where insurer received timely notice of occurrence or claim, but late notice of lawsuit); 1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 4.02[c][1], at 150 (13th ed. 2006) ("In New York and many other jurisdictions, an insured's unexcused delay in satisfying the notice requirement relieves the insurer of its duties to defend and indemnify regardless of whether the delay prejudiced the insurer.").

Briggs does, however, seek to preserve this issue for appeal (presumably for a bid at certification to the New York Court of Appeals for reconsideration of the issue), stating that "the times are changing, since New York seems, in this regard, to be well behind its sister states in considering lack of prejudice as an element for an effective and proper disclaimer under a late notice defense." (Briggs Mem. 19.) Whether or not the rule is outmoded, cf. 1 Ostrager & Newman, supra, § 4.02[c][2], at 152 (noting "rule that is emerging in a majority of jurisdictions is that late notice does not relieve the insurer of its duties under the policy unless the insurer is prejudiced as a result of the delay in receiving notice"), this Court is bound by the New York Court of Appeals' current position that, at least under these circumstances, no proof of prejudice is needed to make out a late notice defense. See Van Buskirk v. N.Y. Times Co., 325 F.3d 87,

6

89 (2d Cir. 2003) ("As the highest court of a state has the final word on the meaning of state law, we are bound to apply New York law as determined by the New York Court of Appeals." (quotation marks and alterations omitted)).

B. Notice of Occurrence

ICH argues, primarily in its reply brief, that Briggs violated the condition that "ICH must be notified as soon as practicable of an 'occurrence' or an offense which may result in a claim," by failing to timely inform ICH of the May 14, 2003, incident, even though Briggs's principal Mehaj was apprised of the incident soon after it occurred. Briggs responds that Mehaj had a good-faith and reasonable belief that no one was injured as a result of the falling ceiling, and that this excused any failure to provide prompt notice to ICH.

The New York Court of Appeals has "recognized that there may be circumstances that excuse a failure to give timely notice, such as where the insured has a good-faith belief of nonliability, provided that belief is reasonable." Great Canal Realty v. Seneca Ins. Co., 5 N.Y.3d 742, 743 (2005) (quotation marks and citation omitted). Reasonableness depends on a consideration of "all the circumstances, and it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstances of the accident or occurrence . . . . Additionally, the insured bears the burden of establishing the reasonableness of the proffered excuse." Id. (quotation marks and citation omitted). Briggs has raised a triable issue of fact as to whether its failure to promptly inform ICH of the May 14 incident was excused by a good faith and reasonable belief of non-liability, and thus ICH's motion may not be granted on this ground.

The only evidence on this issue is Mehaj's affidavit, which states that he "was informed that a portion of the ceiling in [Bonilla's apartment] had fallen," that he "visited the premises and the affected apartment some time after learning of the incident," and that he "was not informed that anyone in the apartment had been injured in the incident and had no reason to suspect so." (Mehaj Aff. ¶¶ 5-8.) Perhaps a fact finder would conclude on a full record that Mehaj failed to conduct an adequate investigation, or otherwise lacked a reasonable belief in non-liability. On this record, however, the Court cannot hold as a matter of law that Mehaj acted unreasonably in believing that no one was injured as a result of the incident, and thus that there was no threat of liability. Such a quintessential fact determination will ultimately hinge on specifics that cannot be gleaned from the face of the affidavit, such as exactly what Mehaj was told about the incident, when, and by whom; what Mehaj saw when he visited the premises and Bonilla's apartment, including the extent of damage to the ceiling that he witnessed; and what other actions he took in connection with the accident. Whether Mehaj reasonably believed that there was no threat of liability, including whether he made an adequate investigation into the accident under the circumstances, will depend on the resolution of these issues. Cf. Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 129 (1957) ("It is . . . well settled that the reasonableness of a delay, where mitigating circumstances such as . . . lack of knowledge of the occurrence or its seriousness are offered as an excuse, is usually for the jury."). New York courts have held reasonable a belief of nonliability on circumstances more portentous than those in the current record, see, e.g., Chama Holding Corp. v. Generali-US Branch, 22 A.D.3d 443, 444-45 (N.Y. App. Div. 2d Dep't 2005) (reasonable belief where order to abate lead-paint danger, though it indicated that plaintiff in underlying action had high levels of lead in blood, failed to indicate

that she "sustained injury" or "that her elevated blood-level was caused by exposure to conditions in the subject apartment"), and thus, there is at the very least a triable issue on this score.

    C.    Notice of Suit

ICH next claims that Briggs violated the condition requiring that "[i]f a claim is made or 'suit' is brought against any insured, you must [n]otify [ICH] as soon as practicable," because Briggs only apprised ICH of the Bonilla lawsuit in early April 2004, over eight months from the time Briggs received notice of the suit through service of process on the Secretary of State. Whether Briggs complied with the condition that it inform ICH of any suit "as soon as practicable" depends on whether "notice [was] accorded [to ICH] within a reasonable period of time," Great Canal, 5 N.Y.3d at 743, including whether there is a valid excuse for any otherwise unreasonable period of delay, id. See also 1 Ostrager & Newman, supra, § 4.03[a][2], at 168 ("When the insured has unreasonably delayed in providing notice to its insurer, and the insured has no legally recognized excuse for that delay, the notice can be untimely as a matter of law.").

If Briggs had simply sat on the Bonilla complaint for eight months before disclosing it to ICH, there is no doubt that notice of the suit to ICH would be unreasonably late. See, e.g., Deso, 3 N.Y.2d at 130 (in absence of valid explanation or excuse, 51-day delay unreasonable as matter of law); Rushing v. Comm. Cas. Ins. Co., 251 N.Y. 302 (1929) (Cardozo, C.J.) (22 days); Haas Tobacco Co. v. Am. Fidel. Co., 226 N.Y. 343 (1919) (10 days).

The question, then, is whether eight months was reasonable in light of the fact that Briggs did not actually find out about the suit until right before it notified ICH in April 2004, due to its "inadvertent and unintentional" (Compl. ¶ 20) failure to keep its current address on file with the

9

Secretary of State. The New York Court of Appeals has not addressed this question, but the Appellate Division, First Department, has, and has held as a matter of law that such a failure is no excuse for a delay in notice to an insurer. See 26 Warren Corp. v. Aetna Cas. & Sur. Co., 676 N.Y.S.2d 173, 173 (1st Dep't 1998) ("The fact that plaintiff itself did not actually receive a copy [of the summons and complaint], due solely to its own failure to notify the Secretary of State of a change in address of its representative to whom the Secretary was authorized to forward process, does not excuse its noncompliance with the notice requirement of the policy[.]").[3] And on a related issue, the Second Department has held that failure to apprise Secretary of State of an address change "does not constitute a reasonable excuse for purposes of vacating a default judgment." FGB Realty Advisors, Inc. v. Norm-Rick Realty Corp., 642 N.Y.S.2d 696, 696 (2d Dep't 1996); see also Cedeno v. Wimbledon Bldg. Corp., 615 N.Y.S.2d 40, 40 (2d Dep't 1994) ("[I]t is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process . . . and failure to meet that obligation will not constitute reasonable excuse to vacate a default judgment. . . . It is for this reason that service of process on a corporation is deemed complete when the Secretary of State is served, regardless of whether

---

[3] Briggs argues that because the policy in 26 Warren stated that notice should be furnished "immediately," and not, as in this case, "as soon as practicable," that case is irrelevant here. (Briggs Mem. 4-5.) Briggs is mistaken. First, the 26 Warren court did not ascribe significance to "immediately" on the precise question of whether the failure to keep an up-to-date address on file with the Secretary of State is a valid excuse, and that makes perfect sense. The question whether an excuse is valid assumes that disclosure to the insurer was untimely, and timeliness is the only inquiry as to which the functional difference between terms such as "immediately," "as soon as practicable," "promptly," or "within a reasonable time," is salient. In any event, there is little or no functional difference between terms like "immediately" or "as soon as practicable"; whatever language a policy uses to limit the time for notice, the touchstone is always the same, reasonableness under the circumstances. See 1 Ostrager & Newman, supra, § 4.03[a], at 165-67.

such process ultimately reaches the corporate defendant." (citations omitted)).[4]

The First Department's holding, which is in accord with the Second Department's holding on a closely related issue, is entitled to great weight in this Court's analysis, unless there is evidence that the New York Court of Appeals would hold differently. See Univ. Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 n.5 (2d Cir. 2004) ("We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on the issue, would reach a different conclusion."); Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 344 F.3d 211, 221 (2d Cir. 2003) (noting that rule applies "as a general matter").

Here, there is no such evidence. Briggs refers to the Court of Appeals' decision in Mighty Midgets, Inc. v. Centennial Insurance Co. (Briggs Mem. 7-10), but the Midgets court, aside from making the unexceptional point that the "reasonableness" inquiry is fact-driven,[5] held only that a seven-month delay may be excusable where a company immediately apprised its

---

[4] The only other court, according to the parties' memoranda, to address whether the failure to keep a current address on file with the Secretary of State constitutes a valid excuse for delay in providing notice to an insurer reached the same conclusion as the First Department. U.S. Underwriters Ins. Co. v. 203-211 West 145th St. Realty Corp., 99 Civ. 8880, 2001 U.S. Dist. LEXIS 24426 (S.D.N.Y. October 12, 2001), vacated on other grounds, 37 Fed. Appx. 575 (2d Cir. 2002).

[5] While it is true that "[g]enerally, the question of whether a delay is excusable is a question of fact for the jury, . . . of course a delay may be unreasonable as a matter of law." Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 724 (2d Cir. 1992) (interpreting New York law); see also 1 Ostrager & Newman, supra, § 4.03[a][2], at 168-69 (listing cases holding delay unreasonable as matter of law). Here, the are no contested facts that could bear on the issue of Briggs's excuse. Whether the failure, even when inadvertent, to keep current the address on file with the Secretary of State, constitutes a valid excuse for untimely notice to an insurer, is a pure question of law that can be answered at this stage of the proceedings.

insurance broker – an agent of the defendant insurer – of an accident and requested guidance, but was affirmatively misled as to the identity of the insurer to file a claim with. 47 N.Y.2d. 12, 16-21 (1979). Here, Briggs was not misled, but claims only that its attorney failed to impart to it principal the importance of notifying the Secretary of State of any change of address. (Mehaj Aff. ¶ 15.) Moreover, the individual who in Briggs's view is responsible for the error was its own attorney, not an agent or affiliate of the defendant insurer, as was the broker in Midgets.[6] Thus, Midgets fails to evidence that the Court of Appeals would part ways with the First Department on this issue.

In any event, the First Department's holding is eminently reasonable. In the first place, just as the misplacing of a complaint in Briggs's office would not excuse a delay of this magnitude, the wholesale "misplacing" of all complaints against it, due to the failure to keep the Secretary of State apprised of an address change, cannot be a valid excuse.[7] More generally, the insurer should not be made to pay for an error made by the policyholder and within his sole control. See, e.g., Olin, 966 F.2d at 725 (holding failure to discovery insurance policies invalid excuse, noting "[a]n insurer has no power over an insured's retention of a policy . . .and bears

---

[6] The Midgets court suggested that even if the broker was not affiliated with the defendant insurer, there would be a triable issue of fact, because insurance companies know and expect that most policyholders get their information from insurance intermediaries like agents and brokers, and not from insurers themselves (indeed, insurers rely on these intermediaries to obtain and manage their clients). Thus, insurers may be charged with responsibility for misinformation conveyed by these individuals. See Midgets, 47 N.Y.2d at 21. However, that rationale cannot possibly extend to policyholders' own personnel – attorneys, executives, secretaries, mail-handlers, etc. – who are not insurance industry go-betweens.

[7] Briggs's excuse might have greater resonance if, for example, Briggs had been diligent in notifying the Secretary of State of an address change, but the Secretary failed to update his own records or otherwise dropped the ball.

none of the responsibility for an insured's loss of a policy"); Koretnicki v. Firemen's Ins. Co., 486 N.Y.S.2d 491 (3d Dep't 1985) (unawareness of eligibility for benefits); Columbus Trust Co. v. Hanover Ins. Co., 375 N.Y.S.2d 628 (2d Dep't 1975) (failure to familiarize self with insurance policies).

It may be true, as Briggs contends, that many owners of small businesses, like Mehaj, are unversed in the intricacies of corporate law (Briggs Mem. 18), such as the requirement at issue here; but lack of knowledge of the law is generally not an adequate excuse, just as it is generally not in areas of the law where the stakes are far greater. See Model Penal Code § 2.02(9) (noting general rule that "[n]either knowledge nor recklessness or negligence as to . . . the existence, meaning or application of the law determining the elements of an offense is an element of such offense"). If it were otherwise, and if such businesses could avoid corporate responsibilities simply by claiming ignorance, there would be no incentive for small businesses to familiarize themselves with the corporate law, and the law's ability to achieve its ends would be hindered.

While this holding may seem harsh as applied to Mehaj and Briggs, in the long run it provides greater incentive for businesses to familiarize themselves with the law's requirements, which in this context will result in, among other things, the more efficient processing of cases through the courts (on this score, note that the Bonilla lawsuit languished for close to a year before action was finally taken by Briggs). Moreover, timely notice affords insurers a better opportunity to protect their interests (the benefits of which accrue not only to insurers, but to policyholders and the public at large), by allowing them (1) to make early inquiries into incidents, gather evidence before it grows stale, interview witnesses while their memories are fresh, and promptly settle cases that do not demand litigation; (2) to correct dangerous and

hazardous conditions, and thus prevent future claims before they accrue; (3) to better calculate the amount of capital they need to keep on hand, and the premiums they need to charge to their customers; and (4) to detect fraudulent claims early on. See Olin, 966 F.2d at 723; 1 Ostrager & Newman, supra, §4.02[a], at 121-22.

For these reasons, the Court holds that Briggs lacks a valid excuse for the 8-month delay in providing notice to ICH of the Bonilla lawsuit, and that it thus failed to comply with the requirement in its policy that it provide notice to ICH "as soon as practicable" of any suit filed against it. ICH has no duty to defend Briggs against the Bonilla suit or indemnify it for losses incurred.[8]

## CONCLUSION

For the foregoing reasons, ICH's motion for judgment on the pleadings and/or summary judgment is granted, and Briggs's cross-motion for summary judgment is denied. This case is dismissed with prejudice.

SO ORDERED.

Dated: New York, New York
May 30, 2006

_____
GERARD E. LYNCH
United States District Judge

---

[8] Finally, ICH claims that for the same reason that Briggs failed to comply with the "as soon as practicable" notice-of-suit condition, it failed to comply with the condition requiring that Briggs "immediately" send to it copies of any legal papers connected with the Bonilla suit. There is no question that Briggs did not provide the documents as soon as they were served on Briggs via the Secretary of State, but that it did forward the papers immediately when it actually found out about the Bonilla suit. Thus, the only question is, again, whether the eight-month delay from the time those papers were served on the Secretary of State should be excused. For the reasons stated above, it should not.

14